# SUPREME COURT.

IN THE MATTER OF THE APPLICATION OF THE NEW YORK AND OSWEGO MIDLAND RAILROAD COMPANY, for the appointment of commissioners to appraise damages for taking lands for the use of the said company.

There can be no doubt but that one *special term* has the power to modify or vacate an order made by another special term.

If, however, the second application is made on the same or substantially the same grounds as the first, it would be a *most indecent exercise of judicial power*, to interfere with the first order; yet it may be done, and there is no known authority to review or vacate such second order.

But if the first order was obtained *ex parte*, or the party on his part, without any fault was prevented from appearing at the hearing, and injustice has been done him, it would be the duty of the court to open the default, and to afford to the injured party such relief as it should deem him entitled to, and the granting of such relief cannot be deemed as an improper exercise of power.

Where due service of the petition and notice required by the general railroad act, is made upon the owner of land to be taken for a railroad, the court acquires jurisdiction to make the appointment of commissioners to appraise damages, &c.

And another special term, upon motion, has power to vacate the order made appointing such commissioners, and to appoint new commissioners, in its discretion, and such order being discretionary is *not appealable*.

*Fifth District, General Term, April,* 1870.

*Present,* MORGAN, DOOLITTLE, MULLIN, & FOSTER, J. J.

APPEAL from an order made at special term, vacating a former order, &c.

C. T. RICHARDSON *for the company.*

H. PERRY *for A. P. Grant respondent.*

*By the court,* MULLIN, J.—Mr. A. P. Grant was the owner of land in the county of Oswego, which the Midland Railroad Company desired to take for the use of its road. And sometime between the 15th April, and the 18th May,

1869, proceedings were commenced to acquire title to said land.

Mr. Grant and his family resided in the city of Oswego, and on the 15th April, went to Europe, and remained absent until sometime in the fall of the same year. He left one Libertyord in charge of his dwelling-house, during his absence, and a copy of the petition and notice required by the general railroad act, to be served upon the owner or his agent, was served on the said Libertyord, being a person of suitable age.

The service thus made was regular, and gave the court jurisdiction. Subdivision 1st, section 14, provides that if the person upon whom the service is to be made resides in the state, service of a copy of the petition must be made on him or his agent, or attorney authorized to contract for the sale of the real estate described in the petition, personally or by leaving the same at the usual place of residence of the person on whom service is to be made, with some person of suitable age.

Service by leaving at the dwelling-house was permitted on the supposition, that the person found there of suitable age, was there by the authority of the owner, or principal occupant, and that he would either appear and protect, the rights of the person owning the land, or would notify him of the service, so that he might protect his rights in the proceedings thus instituted against him.

If the owner has gone to Europe, or elsewhere to be gone for a time beyond the day designated for the presentation of the petition, it may be impossible to notify him of the fact of service, or the person in the house may ignorantly or intentionally conceal the fact of service until after the day for showing cause has passed, and thus the company would be at liberty to proceed and designate their own commissioners and appraise damages and acquire title to the land without any actual notice to the owner, or any opportunity whatever, to protect his rights.

If, however, some mode of service other than personal was not provided, railroad companies might be prevented altogether from acquiring title to lands for their roads. Hence the legislature have, as they have the power to do, provided for this substituted service.

It was urged by respondent's counsel that the residence contemplated by the clause of the section above cited, meant the place where the owner actually was at the time the service was made, and hence the residence of Grant was not in Oswego, at the time of the service, but in Europe.

The word "residence" has a perfectly well defined meaning, and it must be presumed, when it is used in an act of the legislature it is to receive the meaning thus established. I know of no case in which the word has received the definition insisted on by the counsel.

The service being in conformity to the statute, the court acquired jurisdiction, and the appointment of commissioners at the Lewis special term, was entirely regular, as far as the service of the petition and notice were concerned.

I entertain no doubt but that one special term has the power to modify or vacate an order made by another.

If the second application is made on the same or substantially the same grounds as the first, it would be a most indecent exercise of judicial power to interfere with the first order, yet it may be done, and I know of no authority to review or vacate such second order.

But if the first order was obtained *ex parte*, or the party on his part without any fault, was prevented from appearing at the hearing, and injustice has been done him, it would be the duty of the court to open the default, and to afford to the injured party such relief as it should deem him entitled to, and the granting of such relief cannot be deemed as an improper exercise of power.

Grant had been duly served with the petition and notice, but he had not been heard, nor had he an opportunity of being heard. And if improper persons had been appointed

commissioners it was the duty of the court to remove all or either of them and appoint others in their places.

He made no objection in his moving papers or notice of motion to the regularity of the service of the petition and notice, but confined himself to objections to the commissioners; these were, that the same persons had been appointed, and acted as commissioners in a large number of cases in which this company had instituted proceedings to acquire title to lands for its road.

It is not necessary for us to determine whether this was a sufficient ground to justify the special term in vacating the former order, it had the power and it exercised it, as the judge holding it thought proper, and it is not the subject of review on appeal.

It was urged by the appellant's counsel that the court had no power under the general railroad act, to remove commissioners when once appointed.

By section 20 of that act, the court is empowered " to appoint other commissioners in place of any who shall die, or refuse, or neglect to serve or be incapable of serving."

If a person by consanguinity, interest, or bias, or other cause is incompetent to sit as a juror in a cause, happens to be appointed a commissioner, he is incapable of serving as such, within the meaning of the provision referred to. It seems to me that the court had power under the clause in question, to remove all or either of the commissioners if it was satisfied all or either had become incapable of serving.

But, I do not think it is necessary to go to the statute to find power for the court to make the order appealed from.

Whenever jurisdiction is conferred on a court of general jurisdiction in a special proceeding, and the mode of proceeding is not prescribed in the act conferring jurisdiction, it is authorized, and indeed, it is its duty to conform the proceedings as far as practicable to those adopted for con-

In the Matter of the N. Y. & Oswego Midland R.R. Co.

ducting proceedings in such court, and will so control them, and the action of its officers under them, as to attain the objects of the statute, and at the same time protect the rights of the parties and promote the ends of justice, and to those ends, will vacate or modify orders, open defaults, correct errors and amend the proceedings of irregular or defective orders, to conform them to the statute.

The court has the power, therefore, independent of the statute to make the order appealed from.

The appellant's counsel insists that the court in a proceeding to acquire title to land under the general railroad act, has no greater power than the supreme court has in appointing commissioners to appraise damages for lands for streets in the city of New York, and in conforming their reports, and in such proceedings, the court would exercise no powers not conferred upon it by the act, in other words, that it acted as a court of limited jurisdiction.

It was so held in numerous cases prior to the case of *Striker* agt. *Kelly,* (7 *Hill,* 9), in that case it was held that the court acted not as commissioners, but as the supreme court. It was further held, however, that the court had no authority over the proceedings not conferred upon it by the statute.

The first proposition was affirmed in the court of errors in 2 *Denio,* 323 ; *Doughty* agt. *Hope,* 3 *Denio,* 249.

The court of appeals in the *matter of Canal and Walker, Streets,* (2 *Kern.,* 406,) reaffirmed the doctrine of the court of errors above referred to, and recognized the correctness of the conclusion which must follow from it that in the exercise of its functions as a court, it will conform to the course of proceeding in such court as far as the same are applicable, and will vacate, amend, or modify such proceedings as shall be necessary to protect the rights of the parties. GARDINER, Ch. J., delivering the opinion of the court, at page 410 of the case, after referring to the case of *Striker* agt. *Kelly,* (*supra*), as holding that the act giving the court

power to appoint, being proceedings in the city of New York to acquire title to lands for streets, was an enlargement merely of the powers of the court, proceeds to say:

" The powers incident to its general jurisdiction so far as applicable at once attached to the new subject. In administering this law, as every other, the court should require the services of its officers, punish for contempt, issue attachments and *set aside the proceedings on sufficient cause.*"

If these views are correct the special term had power to vacate the order made at the Lewis county special term, and to appoint new commissioners in its discretion, and the order being discretionary is not appealable. .

The appeal is, therefore, dismissed with $10 costs.